### KAPLAN, et al v. MIAMI BEACH ROD & REEL CLUB, Inc.

#### No. 58 C 3202.

Circuit Court, Dade County.

July 10, 1959.

Kovner & Mannheimer, Miami Beach, for plaintiffs.

E. S. Corlett, III and Evans, Mershon, Sawyer, Johnston & Simmons, all of Miami, for defendant.

JOHN W. PRUNTY, Circuit Judge.

This cause was originally instituted in the names of 27 plaintiffs, all residents of Hibiscus Island, Miami Beach, against the Miami Beach Rod & Reel Club, Inc. An amended complaint in the names of nine plaintiffs was thereafter filed alleging that the use of a lot across the street from the Rod & Reel Club where the cars of club

members and guests were parked constituted a private nuisance, and praying that the club be enjoined — (1) from operating during the nighttime hours, and (2) from using the lot as a parking lot. The club, by answer, denied the allegations of the amended complaint.

Upon the issues so formed, the case came on for trial directly before the court. Only three of the original 27 plaintiffs appeared and testified at the trial. During the trial the plaintiffs abandoned their claim for an injunction as to the operation of the club itself. No evidence was offered to support plaintiffs' contention that their property had depreciated in value. The testimony offered by the parties is conflicting in many aspects and cannot be reconciled. The court, having seen and heard the witnesses testify and having observed their demeanor and appearance on the stand, and having carefully weighed the evidence, finds, orders, adjudges and decrees that —

The Miami Beach Rod & Reel Club is recognized as one of the outstanding fishing clubs in the world. In addition to its own activities, the club supports and contributes to the Annual Greater Metropolitan Miami Fishing Tournament, which in turn has created national publicity for this area. Among the club's members are many of the most prominent citizens of this community.

In 1934 the club purchased its present clubhouse on Hibiscus Island which, with substantial improvements, it now occupies. Prior to 1934 the property had been occupied and used as a night club. The club normally holds meetings each Wednesday night. Most of the members attending arrive prior to 7:30 P.M. and a majority leave between 10:30 and 11:00 P.M. In addition, the club has social functions, usually on Saturday nights, on an average of twice a month. In the past when a large attendance was anticipated, the club provided for the services of a member of the Miami Beach police department to direct traffic and the parking of cars. For a number of months a member of the Miami Beach police department has been on duty at all meetings and social functions, directing traffic and supervising the parking of cars belonging to members and their guests. The policeman has remained on duty until after all members and guests have departed.

The Palm-Hibiscus-Star Island Propertyowners Association, which is composed of residents of those islands, advised the club in 1951 that residents of Hibiscus Island were complaining because members of the club were parking their cars on the streets in front

of their homes and creating a traffic problem. Although the members of the club had a legal right to park their cars upon the public streets, the club in an effort to cooperate with the residents, at the request of officials of the Palm-Hibiscus-Star Island Propertyowners Association, purchased a vacant lot across the street from the club for the purpose of providing parking space for its members' cars and, with the permission of the adjoining lot owner, the lot was so used. Because the lot in its natural state was not sufficient to accommodate many automobiles, the residents of the island, through the association, requested the club to do something to provide additional parking space. After conferences between officials of the association, and the club, the club, at the request of the association, paved the lot under a permit from the city of Miami Beach and landscaped it. The club extends to the association the privilege of holding its meetings and social functions at the club, and the lot is used by residents of the islands as a parking lot when attending these meetings and social functions. In addition, at least one of the three plaintiffs who testified at the trial has used the lot with the club's permission for his guests to park their cars on while attending these meetings and social functions. In addition, at least one of the three plaintiffs who testified at the trial has used the lot with the club's permission for his guests to park their cars on while attending private parties at his home.

The use by the defendant club of the lot for parking cars, although probably annoying and disturbing to some degree to adjacent lot owners, is a reasonable and ordinary use under the circumstances, and there is no appreciable, substantial, tangible injury resulting in actual material physical discomfort to nearby residents. The noise incident to the use of the parking lot is not of such volume, frequency, duration or character as to seriously interfere with the plaintiffs' physical comfort, or cause injury to persons of ordinary sensibilities living nearby. Such use of the lot does not constitute a nuisance.

The plaintiffs have failed to sustain their complaint by a preponderance of competent, credible evidence and are not entitled to the relief sought.

The defendant has fully sustained its answer by competent, credible evidence, and the equities are with the defendant and against the plaintiffs.

Said amended complaint is dismissed at the plaintiffs' costs, to be taxed by the clerk, for which let execution issue.